Your Honor, I'm Sam Vinson, representing Rocky Wirtz and Wirtz Beverage Company. AG? Assistant Attorney General Richard Huzzack, representing the defendants Governor Patrick Quinn and the Director of the Department of Revenue and the other defendants. For the record, I have no relation to the other Patrick Quinn, because I'm sure he's as happy about it as I am. Each side has 15 minutes, but you can take some more. Just keep it fresh. I can assure you that we've read the record, although it's not much of a record here. It's more of a legal issue. We've got this much stuff we've all reviewed. So it really does behoove you, both sides, to get your strongest points first. Thank you. Any time you are ready, Mr. Vinson. Your Honor, as I said, I'm Sam Vinson, representing Rocky Wirtz and the Wirtz Beverage Company. There are petitioners and appellants in this matter. I'd like to thank the Court for so quickly ordering argument after the briefing was completed. I'd like to illustrate the constitutional importance of several of the matters in the brief. I hope to do that quickly and reserve a couple of minutes for rebuttal in case there's further matters developed. Both petitioners are Illinois taxpayers. They seek to represent to exercise rights Illinois law has preserved from the common law. We've briefed a lengthy number of cases in the legacy of that history. Quite simply, I'm here representing taxpayers who have been denied the opportunity to present their case in court, denied due process. The Circuit Court misapplied a gatekeeper provision designed to screen out frivolous suits and by doing so denied entry of a very serious constitutional matter relating to several laws enacted in 2009. Those laws were passed in violation of constitutional provisions, the single subject rule, the ban on substantive language in appropriation bills, and the uniformity clause in our Constitution. Wirtz Beverage is a firm engaged in the business of distributing wine and spirits throughout Illinois. Wirtz Beverage is closely regulated by the Illinois Liquor Control Commission under the Liquor Control Act. The Act requires distributors to be licensed by the Commission. The Act historically has imposed a tax measured by the gallon on the occupation of distributing beer, wine, and spirits. That tax is deposited into the General Revenue Fund by law. In 2009, the General Assembly imposed a new tax on the occupation of distributors to be deposited into a new fund created at that time, the Capital Projects Fund, intended to finance a wide array of new projects. The numbers, the new tax is 5 cents a gallon on beer distributors and $4.05 a gallon on spirits distributors. Historically, the tax was 18 cents a gallon on beer distributors and about $4.50 a gallon on spirits distributors. There's no difference in these distributorships, certainly no difference that merits any kind of differential treatment of this magnitude. Mr. Vincent, Mr. Wirtz is a distributor as a result of, I don't want to say near monopoly, but as a result of a different act of the state legislature, is that correct? Excuse me, sir, I couldn't hear you. The liquor distributorships are determined in Illinois by legislation, are they not? So the reason Mr. Wirtz is able to be a liquor distributor is because the state legislature said he could. There's a law that establishes a requirement that you be licensed as a distributor. In fact, there are many distributors in the state. And for Cook County, how many would there be? In Cook County, there are, I believe, five beer distributors, and there are six or seven wine and spirits distributors. Okay. If I may, and I don't mean to cut you off, if we agreed with you, disagreed with you on uniformity, but agreed with you on, say, a single subject, what would the result be? The result would be that you would probably send the case back to the circuit court, instruct the circuit court to enter the complaint, and have the case heard in circuit court, and decide it there. I suppose I'd be perfectly happy, sir, if you just entered a judgment saying that the case is unconstitutional, but I think, in fact, you'd probably send it back to the circuit court. Indeed, in your conclusion, the relief he asked for is for us to find that the trial court misconstrued the applicable standard of review, and we should send it back for his decision as to whether or not to address the uniformity clause, the single subject clause. Yes, sir. Is that correct? Okay. Well, go ahead. As I said, the Attorney General has not tried to justify the tax difference in articulating any difference in the occupations the tax is levied on. Third, in the case of the historic tax for spirits distributors, it is 25 times that on beer distributors. The new tax is 81 times that on beer distributors. The disproportion is more than three, 81 versus 25. That disproportion occurs in two taxes levied at the same time. How can two so disproportionate taxes be levied for the same purpose on the same occupations? Combined, the historic tax and the new tax on spirits distributors is 10 times the tax on beer distributors, even when you adjust for the amount of alcohol in the two products. I'd like to bring the Court's attention to the deficiencies in the passage of these bills, constitutional deficiencies. Counsel, may I ask a question? You just pointed out to Justice Quinn that the case was brought here on a section 2615 motion, and you pointed out to him that we need to address that issue, and we really cannot address the constitutional challenges that you raise. Shouldn't you explain to us why the trial court erred when it granted that section 2615 motion to dismiss? Your Honor, when we were before the trial court, we specifically asked the trial court whether or not the trial court was ruling on a 2615 motion, and the trial court said it was not. The trial court said it was ruling on an 11303 motion. And, in fact, the Attorney General reiterated that point, said they were only asking for consideration on the 11303 motion. Now, the 11303 motion goes to the question of whether there's any reasonable grounds for the entry of the complaint. And one of the things I believe that ought to be reviewed on appeal is whether one of those reasonable grounds is the fact that there was a well-pled constitutional violation. A well-pled constitutional violation that deserved that we get the benefit of every well-pled fact and that we get the benefit of every inference from those well-pled facts. So you're essentially pointing out to the court that you presented a reasonable ground. Yes, sir. Therefore, I should have granted your motion to leave to file the complaint. Yes, Your Honor. Okay. I'd like to go first to the appropriation bill. It contains substantive language in violation of the Constitution. Article 4, Section 3D, Section 8D prohibits substantive language in an appropriation bill. The Attorney General's answer in the trial court and in this court has been that it's perfectly okay for the legislature to include qualifiers and conditioners in an appropriations bill. For support of that argument, they've relied on one thing. That one thing is an Attorney General opinion from 1975. Shortly thereafter, in 1976, in a case we've briefed in both courts, the Devon Bank case, the Supreme Court rejected that reasoning. In the Devon Bank case, the Supreme Court said you cannot add a new conditioner that qualifies the substantive language in a statute in an appropriation bill. That's adding substantive language and it's prohibited by the Constitution. In this appellate court, the Attorney General has continued to rely on that 1975 Attorney General's opinion and use that same language. We've briefed to you a subsequent Attorney General's opinion that actually superseded that 1975 decision where the Attorney General recognized, in his opinion, that the Devon Bank case had been decided and that, in fact, the Devon Bank case controlled and that you could not have a conditioner or a qualifier that modified the substantive law in an appropriation bill, that that's simply unconstitutional. There is substantive language in this appropriation bill. It imposes entirely new conditions and Environmental Protection Agency grants, which otherwise would be totally lawful grants. There's language also for the expenditure of capital funds that creates a new condition on that expenditure and requires the Governor's approval for an expenditure of capital funds that otherwise would be expendable totally pursuant to the statute, to the existing statute. That's a qualifier. That's a conditioner. That's a new clause put into the substantive law by an appropriation bill and the Devon Bank case tells you clearly that that's impermissible according to the Supreme Court of Illinois. So, Your Honor, the appropriation bill is clearly unconstitutional. It violates Devon Bank and when you recognize that, you come face-to-face with a very harsh reality. What we call the omnibus bill, what the legislature called an act concerning revenue, what the Attorney General has called several other things, that bill created all of the funds for these various purposes. That bill created all of the funds and it does not take effect. It has a clause in it that says that it does not take effect unless the appropriation bill takes effect. The consequence of that, if you find that the appropriation bill is unconstitutional, means that the omnibus bill never took effect and anything done under the omnibus bill is unconstitutional. It's wrong. The General Assembly has actually spoken. The words of the law are stronger than my simple description. The word in Section 99 of the omnibus bill, the Revenue Act, call it what you will, states that it does not take effect unless 312 as amended. So 312 in its current form becomes law. 312 cannot become law in its current form because the appropriation bill contains that substantive language. Each bill conditions its effectiveness on a Siamese twin taking effect, quote, as amended. They're joined not just at the hip. They're joined organ by organ. They're joined limb by limb. This linkage makes a mockery of the whole concept of single subject and appropriations language, substantive appropriation language in an appropriation bill. It makes a mockery of it because it essentially says that what the General Assembly tried to do was incorporate into each bill the other bill. And that means that it incorporated enormous substantive language into the appropriation bill, and it means it incorporated the appropriations into the substantive bill. Our legal theory is wrong? Maybe it is. Okay. Then consider this. You've got to live with the language the General Assembly gave you, and that language says that the omnibus bill doesn't take effect if the appropriation bill doesn't, and if the appropriation bill has substantive language, then the omnibus bill does not take effect. Together, therefore, neither of these bills should take effect. They both should be found unconstitutional. Well, they argue that's just logic, right, that it's logical that if there's no money, which would come from the omnibus bill, the appropriations bill should not take effect. Why is that wrong? Why is that not logical, sir? It's probably logical. Why is it illegal? It's illegal because what you're essentially doing is incorporating into the appropriations bill all of the language in the omnibus bill, and you're incorporating all of the language from the appropriations bill into the omnibus bill. And when you do both of those things, you violate the prohibition of doing the two things together in a single bill. And we've, you know, the Illinois Constitution set up this rather new standard, this rather harsh standard, because it wanted the legislature to consider these things separately. And what they've done here is to try to get around that constitutional restriction. The legislature, if I might proceed to the question of single subject, let's take that omnibus bill and discuss it on single subject terms. It's Public Act 9634, or when the legislature considered it, it was House Bill 255. We agree with the Attorney General there's a two-step test in single subject terms. First, is the subject so broad that it would render the single subject clause in the Constitution meaningless? Second, is the subject so vague? Do the provisions within the bill actually relate to the single subject? The legislature called this bill an Act Concerning Revenue. In the circuit court, the Attorney General stated, and I quote, it addresses the methods to accrue state revenue, as well as where and how it will be accrued, how it will be used, expended. Now, after one reads the Olinder case, one recognizes that the Attorney General really tried his very best to find a single subject for the bill in the Olinder case, and they called it a revenue bill, just as they called the bill in this case, in trial court, a revenue bill. They gave a very good college try with the argument that it was a revenue bill. In fact, the Supreme Court said it doesn't pass the smile test. You don't have a revenue bill if you include within it provisions for the expenditure of funds. That's what happened in Olinder. The Supreme Court found the bill unconstitutional because it provided for the expenditure of funds and things like the collection of new geographical data for the state of Illinois. Now, the Attorney General argues, and is surely correct, the court earlier approved the bill in the Gay-Huss case. And in the Gay-Huss case, the court reviewed a bill that transferred revenue to McCormick Place, that raised new taxes for McCormick Place, that authorized new construction at McCormick Place, and that rearranged Lake Shore Drive around McCormick Place. Is this inconsistent with the Olinder test, even though Olinder was decided after the Gay-Huss case? No. The court said that everything in the bill was designed to deal with the expansion project at McCormick Place. It authorized one project. It financed one project. It was not a revenue bill. It was a single project bill. That's very different than a revenue bill. In this appellate court, the Attorney General has turned up its nose at the trial division's endorsement of the legislature's description of the omnibus bill as a revenue bill. Remember, I read you what the trial division said. It addresses methods of accruing revenues as well as where and how those revenues will be used. The appellate lawyers have tried to distance themselves from that description. With the benefit of more time to study this hydra-headed monster that we call the omnibus bill, the clever trial lawyers, herpetologists perhaps in the appellate division, have recognized that Olinder comes back to haunt them if they in fact describe this bill as a revenue bill because this bill would possess the same defects as the bill in the Olinder case because it also authorizes the expenditure of revenue, not just the collection of revenue. The Attorney General is very honest in saying what was said in the circuit court, that the bill in addition to revenue does authorize where and how revenue will be expended. How do you get a regular report from the governor without spending money? How do you get a regular report from the University of Illinois without spending money? Obviously, you can't. That's the expenditure of money, public funds. So on appeal, the Attorney General shifted his description of a single subject in the omnibus bill. Everything in the bill now relates to capital projects. See page 48 of their appellate brief. Excuse me, page 28 of their appellate brief. The legislature's declaration is that a concerned revenue does not matter. See page 29. All of the provisions of Public Act 9634 relate to capital projects. That's what they argue in page 29 of their brief. But do they? Do they all relate to capital projects? Let's look at the Lust Fund, the leaky underground storage tank fund. It's not a new capital project. No new revenue goes to it. The language simply changes how the money in the fund will be expended. It must now be expended for lust, leaky underground storage tanks. Not the sweeps that it was previously used for, that's simply transferred at general revenue and spent on other matters. There's no capital project here whatsoever. There is simply a direction on how to re-spend state money. Further, what the omnibus bill does is it devotes a quarter of a billion dollars in 2010 and every fiscal year thereafter to a transfer to general revenue. As the Attorney General has pointed out in their brief, and as the State Finance Act states, money in the general revenue fund can be expended for any application of the state. It can be expended for Medicaid. It can be expended for mental health. It can be expended for salaries. It can be expended for children in need, things that are important, things we all care about, things that we all hope the state does and does effectively. But those aren't concrete. They're not steel. They're not glass. They're not construction whatsoever. They're not asphalt. They're, in fact, human needs, human services. And that money, when it goes for human services, is no longer capital money. It is not money for a capital project. The Attorney General has simply failed in trying to find a single subject for this. It's not a revenue bill and it's not a capital project bill. Over the years, billions of dollars under this bill would be devoted to human service needs, not to capital projects whatsoever. So, as a consequence, this bill fails the single subject test, if there's any meaningful single subject test in the Illinois Constitution. And the Supreme Court has said in numerous cases, Olinder, Johnson, Reedy, that we have a single subject test and that it's important to have a single subject test. I'm prepared, sir, to answer any questions or to prepare for anything you'd be interested in. We have a few minutes for reply. We'll hear from the Attorney General. Whenever you're ready. May it please the Court, again, Assistant Attorney General Richard Huzzack, Counsel for the Defense Appellees, and I urge the Court to affirm the Circuit Court's ruling denying leave to file the complaint in this case because on its face it does not establish any viable constitutional claim for challenging the various capital acts or any of them that are the subject of this proposed taxpayer standing suit. I was principally going to focus on the two issues, the uniformity clause challenged to the various rates for the wholesale alcohol taxes and the single subject rule, but I see that additional attention was paid to the substantive legislation claim that the Appropriations Bill includes substantive legislation. So I intend to cover that as well, but if the Court has any questions about any of the other arguments that are made in the briefs on any of the other claims, I certainly do want to cover those. I would suggest keeping the uniformity argument very short and very long on the single subject. Let me go with that then. I just want to then on the uniformity clause, I want to say that there's been a mischaracterization of the relevant tax rates. The reply brief for the first time comes up with some strange contention that the tax rate on wine applies only to wines of less than 7 percent. I think a reading of the statute makes it clear that that's directly contrary to the relevant language, that the tax rates per drink are 2.2 cents for beer, 5.4 cents for wine, and 10 cents for spirits and hard liquors, consistent with the notion that higher taxes on stronger alcoholic beverages promotes the ultimate goal of temperance because stronger beverages have a history of being more conducive to excessive consumption and the social ills associated with that. So let me then turn to the single subject rule arguments, if I may. I believe that the thrust of the petitioner's claims in this case is to seek some single provision in one of the bills, examine it in isolation, out of context from the rest of the relevant statute, and then argue that it must, therefore, violate the single subject rule because it's so disparate, it's so distant, it's foreign to the purpose of the relevant bill or statute. And in fact, a closer examination shows that that sort of myopic focus is misconceived. The Vastead case, which, following Ehrengold, upheld the 2004 budget implementation. That was a budget. A budget will contain hundreds of different projects. Well, it's not a budget bill. It's a budget bill in almost every relevant sense of the word. And it covers many, many projects. I suppose you could say that, counsel. But it's not a budget bill. Well, then I suppose do we attach constitutional significance to the label that annually they're allowed to pass one budget but that until they do so they're not allowed to do something on a separate initiative basis. The context of this set of laws, all of which were signed together, was that it was the depths of the great recession. And whether the court may agree or disagree with the wisdom of the legislature, the legislature's determination was that it was important to do something to create the type of initiative that comprised the various projects that were authorized in this bill, and to do so without busting the budget but raising sufficient revenues and redirecting the existing sources of revenues to that purpose so that these projects could be implemented and go forward. And so that anybody who would be against this type of bill would be accused of being against jobs. But that's a political calculation that the legislature is entitled to engage in. And they are, as long as they're separate bills. Well, I guess I have to ask this then. If the legislature passes a bill authorizing hospital construction, does that have to be separate from a bill authorizing reconstruction of facilities in public parks? Does it have to be separate from a bill that authorizes the projects in schools to upgrade their technology? Who are you asking that question of, counsel? Pardon me? Who are you asking that question of? I'm saying as a constitutional matter, if Aaron Gold upholds the principle that a Budget Implementation Act can include all of these different types of projects and revenue-raising devices and specific spending initiatives, there isn't a defensible constitutional boundary that prevents the legislature from doing less on a one-time initiative, especially in the context of the circumstances where this initiative was passed. The roads and infrastructure that needed attention, including the bridges, the serious needs of the schools and the hospitals, were all encompassed in this bill. And it was, we submit, within the constitutional prerogatives of the legislature to treat that as a permissible single subject. It is not so remote in generalness that it defeats the entire purpose of the single subject requirement. The words people complain that in the article for the Appropriations Bill, the article reading, this bill will not, this, quoting now, does not take effect at all unless, in brackets, the omnibus bill as amended becomes law. So they're linking two different statutes completely together. You file a memo in the trial court saying this is logical. And it is logical. Can you cite two other statutes which refer to each other in such a manner that if this is not signed, this will fail? I don't know that in the history of the Illinois legislature there's been a similar statute. I do know that under a virtually identical provision in the Florida Constitution. So you don't have any instance in Illinois where that's occurred or been upheld or struck down? That specific issue, no. I can tell you that the notion that an appropriation bill can be, excuse me, that a bill can be made conditional upon future events has been upheld. That principle is well established. It is in terms of school districts. One school district wants a school area, wants to move from one school district to another. And that makes perfect sense because you have to have a school district that's willing to accept them. And you have to have people who vote on that as to whether that's okay or not. I suggest to you in what research I did in this area, when there's lack of money for an appropriate, for a expenditure bill, they put that right in the bill. And they say, for example, on a highway bill, quoting now, this is from State House Bill 6811 from March 12th of this year, quoting, expenditures shall not exceed funds to be made available by the federal government. And that takes care of the logic problem that you point out in your memo. That if there's no money, well, you certainly couldn't spend it. And there is a way to pass acts that say just that, that you can't spend more money than we have. But they don't say, if you strike down this bill, if the legislature fails to pass this bill, then the other bill fails. And they don't say, and if the governor vetoes this bill, this other legislation fails. You can't cite a case for that. No, I can't. But I will say that the logic is consistent with the relevant constitutional principles. I mean, here you have an interrelationship between various pieces of legislation where it made no sense to pass a bill creating new revenues and redirecting former sources of revenues to these projects unless the projects were passed. What's the point of raising the liquor taxes and the candy taxes and the other taxes and imposing that cost ultimately upon the taxpayers of the state of Illinois if the projects to which those revenue sources are going to be devoted aren't separately passed? Likewise, what's the point of passing an appropriation bill where the appropriations are for nonexistent revenues and nonexistent projects? What I would say is that there's a difference between saying the appropriation bill incorporates all of these other bills, which I don't believe it does, and to say that the appropriation bill makes its effectiveness subject to this condition. Then the question is, is that condition constitutionally valid? It's not incorporating those provisions. The reason it should be done the way your question apparently is, well, doesn't this make logical sense? Why wouldn't you do it this way? And that was explained by our Supreme Court in Olinder where they say to prevent log rolling, trying to pass an unpalatable bill by tying it to a palatable bill, the single subject rule facilitates the enactment of bills through an orderly and informed legislative process. By limiting a bill to a single subject, legislators can better understand and more intelligently debate the issues presented by a bill. This bill, and I don't recall there being any debate about this bill. I recall, if you have it in the record, please send it to us. But the single subject rule ensures the legislature addresses difficult decisions it faces directly and subject to public scrutiny, rather than passing unpopular measures on the backs of popular ones. And that's why you would do it separately, counsel. There's no dispute that there's a significant substantive component to this single subject rule. And it's a valid purpose supported by that. I mean, we see sometimes what happens in Washington where there isn't that type of requirement and log rolling run them up results in these Christmas tree bills tacked on to appropriation measures that have resulted in much of the dismay about that legislative process. In Illinois, however, if an annual budget bill can include all of these things as a single subject and budget bills are subject to the same requirement, I don't see a defensible line that would distinguish that type of process from the type of mini-budget that goes on with respect to the type of initiatives involved here passed in the circumstances in which these bills were enacted. Well, then perhaps you should read Olinder. And I know you did, counsel. But that argument was made in Olinder and rejected. Because the Attorney General's Office, and it's your job, has to come forward and say, well, look, in Aragon, they passed a budget that included hundreds of things. And yes, they did. That's what a budget bill does. And so they cite in every case there is a single subject argument, the AG has to say, well, in Aragon, we passed 150 different things. Well, it's been rejected. Not Aragon is rejected as to budget bills, but as to every other bill, it has been rejected. Did they apply Aragon and say we're going to follow Aragon in Olinder? In Olinder, the subject that was presented as the subject that supported all of the provisions in that bill was revenue. The government in this case, although I will concede that there have been different subjects presented as the permissible subject of these acts, the Beauclair case by the Supreme Court says what the legislature describes of the subject or the various descriptions of the subject given by the advocates are not controlling. We look to the substance of the bill. And if the substance of the bill and all of its components relate to a permissible single subject, then that is constitutional under the single subject clause. And what's your strongest case for us to find that this polyglot of bills, of various projects, passes muster? I would say that the Valstead case, the Arangold case, and the Gay House Cafe case are consistent. The Arangold, Gay House Cafe, as they pointed out, involved McCormick Place. And they moved part of Lake Shore Drive forward. And they built McCormick Place. That does look like one project. Let me say this. The petitioners have argued that the court should essentially depart from the two-part test established by the Illinois Supreme Court, which is permissible single subject in all parts logically and naturally related to that subject. And now they're saying, oh, it can't pass unless you also meet this additional element, which is that there will only be one new act or one project. The case law doesn't say that. It's not incumbent upon this court to change prior law that's clearly established and say, now here's a new element. You can only have one project to satisfy the single subject bill. Or you can only have one new act. That's not part of the test. They haven't established that there's any difference under single subject analysis between a budget bill, which is an annual budget, and the bills that comprise, each individually and all collectively, that comprise the capital projects initiative in this case. They don't have a case the other way. We don't have a case our way. But we're saying the law is established. There is no additional, no multiple projects or no multiple acts requirement. And it's so clear that the trial court should not have let this petition be filed. If it's ultimately a question of law, what are we going to do at the trial court to advance the question whether they have stated on the face of this complaint reasonable grounds for going forward? And it is a question of law, is it not? Absolutely it is. And if it's a question of law, then either up or down the circuit court was correct or it was incorrect with respect to allowing this case to go forward. With respect to the single subject clause. If we disagree with the trial court, there would be no reason to send it back to the trial court since it's a question of law. We would not need Judge O'Gara's theories of why he was correct since we already found that he was mistaken. If you rule on the single subject clause, yes, we agree. I wouldn't say that's necessarily true with respect to all the other claims that they brought. On those, they make the argument that they're entitled to a trial. You know, we're going to call a witness to taste beer and whiskey and see if there's a real and substantial difference. I don't think that's really where that issue should be going. But if we find single subject violation, the solution then is for us to find the entire acts, all of the acts, unconstitutional. Isn't that correct? Absolutely. There is no single subject exception because the purpose is to prevent log rolling. And I'd like to harken back to a comment that the court made earlier, which is that log rolling doesn't mean that you eliminate any given take in the negotiation process in the legislature so that if somebody is interested in a bill but they say, listen, I can't support that because I think it really should look this way. And somebody says, well, I think that provision should be modified in this. That's part of the normal legislative process. And the single subject rule wasn't intended to eliminate that type of legislative process. What it was intended to eliminate was taking hopelessly unrelated provisions that are foreign to a single subject, throwing them all together because that's the only way they can get passed. And we would submit that to the extent there is a permissible single subject, and we advocate the rule that the Capital Projects Initiative is a permissible single subject under established law, the two-part test, then all the relevant provisions relate to it. Now, they have argued, and I really haven't addressed much at oral argument here, that this provision doesn't relate, that provision doesn't relate. And I would like, if the court believes that there is any potential merit to any of those provisions, you know, those arguments, to be able to address those specifically. Go ahead, if you're ready. There's the argument, for example, that the provisions relating to the pension benefits that are to be conferred upon investigators of the Illinois Gaining Board are unrelated to the bill in which that is located. And again, this is a classic example of taking something totally out of context and looking at it in isolation and then saying, well, it can't possibly relate to the relevant subject of the bill. But that's not correct. The Illinois Gaining Board, the bill created the new authorization for video gaming and for additional management and supervision of the lottery system. And it specifically, because it expanded the gaming board's responsibility, authorized them to hire investigators. In the past, the gaming board relied upon investigators from the state police. Now the statute specifically gives them the power to hire these investigators. Well, investigators as state employees are going to be subject to the pension benefit provisions of the pension code. And so there is a change in the relevant language to add Illinois Gaming Board investigators as one of the classes of persons that are eligible for, in this case, I believe it's the alternate retirement annuity calculation for people that are members of that retirement system. It relates. It's perfectly consistent. And to the extent that the Volstead case provides a relevant analysis, I think it's helpful there. There the accusation was made that the requirement of disclosing your status as a seller of new or used tires was inconsistent with the purposes of that law. And the court said, no, we've increased the fees on the sales of tires, new and used, and there's a responsibility for the state EPA to regulate that and to oversee the implementation of that program. And the requirement that these disclosures to the EPA made are naturally and logically connected to that part of that integral bill. The same is true here. The argument is made that the disbursements authorized out of the Lust Fund for remediation programs is outside the subject of that bill because it can't possibly be a part of the capital projects initiative. But that, again, is sort of a myopic, isolated focus. What the bill did was it prevented sweeps out of the Lust Fund. Every year the governor is authorized by statute to take sweeps out of monies out of Lust Funds. It stops that. And the bill at the same time increases the authorized disbursements for the remediation programs out of the Lust Fund. To the extent that they need to protect that Lust Fund money for which additional disbursements are made, they're stopping the sweeps. This is integrally related and connected in a logical and natural fashion. The same applies to all of the other provisions that they've tried to focus on in isolation. And except for the ones that are really articulated or fleshed out for the first time in their reply brief, which I think are, for that reason, forfeited, I believe they're satisfactorily addressed in our briefs with respect to the claim that, you know, they're disbursed, they have no relationship. I think the Volstead test is, is it foreign to the rest of the bill? You can't force them to put it into a different bill under some contrived single-subject analysis if, in fact, it is logically and naturally related to the bill's other provisions that all connect to the same single purpose. So I would say that that is the test. On the appropriation bill containing substantive law, I think there the battle line is drawn. We have said that an appropriation law can contain conditions. And the question then becomes, is it a permissible condition to say that the appropriation law doesn't become effective unless other bills for which those appropriations are related also become effective? It's not incorporating those laws. It's simply saying the appropriation does not become effective unless those laws are passed. If the Court has no further questions, I urge it to affirm the Circuit Court's decision, and thank you for its consideration. Thank you for the argument. Mr. Vincent, very briefly. Your Honor, very briefly, I'd like to simply make the point in regard to the Attorney General's comments on uniformity that, in fact, we agree on the legal analysis of whether something meets the uniformity clause. If a plaintiff files a case challenging uniformity, the burden shifts to the state. And at that stage, the state has to identify, articulate a justification for the differential categories in the tax. And if the state identifies an argument about that, a justification for the tax, the burden then switches back to the plaintiff to prove that there's something wrong with that justification. In this case, we've articulated a difference between the tax on beer distributors and the tax on spirits distributors, an enormous difference. And, in fact, we've articulated the fact that there are two different taxes applying at the same time with differential ratios. Now, given that, the state has argued that to try to meet their burden responsibility, that the purpose of the tax is, in fact, tempered. What we have said- They didn't really argue that here, though. It's in our brief. It's absolutely in our brief. But it's really in it. We didn't ask. And the fact of the matter is, very simply, the Supreme Court has said you can't assume this tax passes through. It's a tax on distributors. It's not compelled to pass through. That's in the briefs, counsel. Finally, I'd like to simply make a point on a single subject. The state referred to a bill they called the Budget Bill, historically decided by the Supreme Court, the Aaron Gold case. In fact, Aaron Gold said something very simple. Aaron Gold said, our review of the Act's provisions persuades us that the entire Act is directed toward changing substance of law to implement the budget. The legislature made these changes to ensure that expenditures in a program did not exceed appropriations for that specific fiscal year. That's not what we're dealing with here. This is not an attempt to reduce substance of law requirements in order to meet a budget. There's no budget bill here whatsoever. What's going on here is the creation of a vast array of new programs. And if you say that that's okay because of Aaron Gold, because of budget implementation, then what you're saying is that anything conceivable to the mind of man, or at least to the mind of legislators, could be included in a budget bill. My golly. That's quite a single subject. Thank you. Thank you. Thank you, both sides, for the briefs and the fine arguments. And we'll take this case under advisement.